FILED
2023 Mar-21  PM 04:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| LAUREN REYNOLDS and LAURI PENN, individually and on behalf of all others similarly situated, | : : : : : | **Civil Action No.: 5:22-cv-503-RDP** |
| Plaintiffs, | : : : | **CLASS ACTION COMPLAINT** |
| vs. | : : : | |
| PROGRESSIVE DIRECT INSURANCE COMPANY, an Ohio corporation, and PROGRESSIVE SPECIALTY INSURANCE COMPANY, an Ohio Corporation, | : : : : : | **JURY TRIAL DEMANDED** |
| Defendants. | | |

**THIRD AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Lauren Reynolds and Lauri Penn (collectively, "Plaintiffs"), by and through undersigned counsel, bring this class action, individually and on behalf of all others similarly situated, against Defendant Progressive Direct Insurance Company ("Progressive Direct") and Defendant Progressive Specialty Insurance Company ("Progressive Specialty", collectively, "Progressive" or "Defendants"), and allege as follows:

**INTRODUCTION**

1.      This is a class action on behalf of Plaintiffs and all other similarly situated claimants in Alabama who received a payment for the loss of a totaled vehicle from Defendants, where Defendants used valuation reports prepared by Mitchell International, Inc. ("Mitchell") to determine the actual cash value ("ACV") of the loss vehicles. By using these valuation reports, Defendants systemically thumb the scale when calculating the ACV of claimants' loss vehicles by applying so-called "Projected Sold Adjustments" that are: (a) arbitrary; (b) contrary to appraisal

standards and methodologies; (c) not based in fact, as they are contrary to the used car industry's market pricing and inventory management practices; (d) not applied by the major competitor of Defendants' vendor Mitchell; and (e) on information and belief, not applied by Defendants and Mitchell to insureds in other states like California and Washington.

2.      In the event of a "total loss" to an insured vehicle—i.e., where repair of the vehicle is impossible or uneconomical—Defendants' uniform insurance policies with Plaintiffs and all putative Class members (defined below) promise to pay for the loss, limited to the ACV of the vehicle. Attached as Exhibit A is a copy of Plaintiff Reynolds's Policy ("Policy"), which is materially identical to the policy for all members of the putative Classes.

3.      When valuing total loss claims for vehicles, it is improper for an automobile insurance company, such as Progressive, to undervalue and underpay the claims by manipulating the data used to determine the ACV of the vehicles. Specifically, under their insurance policy terms and applicable Alabama law, Defendants have a duty to pay, and represent that they will pay, the ACV of a loss vehicle when adjusting total loss claims.

4.      Notwithstanding these obligations and representations, Defendants fail to fulfill their obligations by taking advantage of a valuation process that employs improper adjustments to reduce the value of comparable vehicles specified in the valuation reports, in turn reducing the valuation of the total loss vehicles and the corresponding claim payment to the insured or claimant.

5.      Specifically, Defendants, through Mitchell, systemically apply a so-called "Projected Sold Adjustment" that results in a significant downward adjustment to the base values of the comparable vehicles used to calculate the ACV of Plaintiffs' and Class members' total loss vehicles. This reduction is contrary to appraisal standards and methodologies and is not based in fact, as it is contrary to the used car industry's market pricing and inventory management practices.

2

The adjustment is applied to each of the comparable vehicles on top of adjustments for differences such as mileage, options, and equipment. The only purported explanation for the downward adjustment appears on the last page of the valuation reports and is a general, nondescript statement claiming that the reduction is to "reflect consumer purchasing behavior (negotiating a different price than the listed price)." Exhibit B at p. 11; Exhibit C at p. 8.

6.      Neither Progressive nor Mitchell has ever conducted any study or research to determine whether such "consumer purchasing behavior" exists and impacts ACV in the modern used-car market. Worse than this complete lack of curiosity is that Defendants thumb the scale by discarding vast amounts of relevant data that contradict applying a Projected Sold Adjustment. For example, until July 2021, Defendants, through their vendors, simply threw out all data where the list price equaled or exceeded the sold price. And to this day, they persist in excluding from Projected Sold calculations some data where the list price equaled sold price and all data where the sold price exceeds the list price, even though examples abound of dealerships that charge more than advertised price to customers purchasing a vehicle with cash—i.e. not providing the dealer the opportunity to profit through financing the sale or acquiring a trade-in—which is particularly relevant to the inquiry of determining a vehicle's actual cash value. Defendants fail to control for whether the vehicle was purchased with cash, or whether there were ancillary purchases or transactions that may influence the "sales price" but not the ACV (e.g., whether the customer traded in a vehicle at time of purchase, bought an extended warranty or service plan, or financed the purchase).

7.      Nevertheless, Progressive applies a Projected Sold Adjustment to the advertised (or listed) price of comparable vehicles when calculating the ACV of total-loss vehicles. For Plaintiff Reynolds, the Projected Sold Adjustment was approximately 6.21% of each comparable

vehicle's value prior to adjustments. For Plaintiff Penn, the Projected Sold Adjustment was approximately 7.00% of each comparable vehicle's value prior to adjustments. To arrive at the Projected Sold Adjustment amount, however, Progressive, through third-party vendors, and as set forth above, categorically excludes transactions that undermine its flawed thesis: for example, transactions where the sold price exceeds list price, transactions from dealerships who market themselves as "no-haggle" dealerships, and every transaction where the sold price equaled the advertised price.

8.     As explained herein, the used auto market is such that, given the ubiquity of Internet advertising and shopping and developments in sophisticated pricing software, car dealerships simply do not negotiate off of Internet-advertised prices. Any difference between a list and sales price does not reflect a negotiation of the vehicle's cash value, but rather that a dealer shifted its profits to other components of the transaction: for example, profits made through financing or trade-in or ancillary products described above, or that the dealer applied a generally unavailable discount to the cash value of the vehicle (such as employee discount, loyalty discount, military discount, or friends/family discount). But Progressive ignores these market realities and is content with paying insureds and claimants below-market prices for their totaled vehicles.

9.     To arrive at its conclusion that consumers negotiate down the advertised price, Progressive, through its vendors, intentionally distorts the data, excludes transactions that undercut its false hypothesis, and ignores market realities, all for the purpose of applying a capricious and unjustified Projected Sold Adjustment to artificially deflate the value of total loss vehicles.

10.     This pattern and practice of undervaluing comparable and total loss vehicles when paying automobile total loss claims through these arbitrary, unsupported, unjustified adjustments, which benefits the insurer at the expense of the insured, violates Defendant's policies with its

insureds.

## PARTIES

11.     Plaintiff Reynolds, at all relevant times, was an Alabama citizen. At all relevant times, Plaintiff Reynolds was contracted with Progressive Direct for automobile insurance. On or about February 21, 2017, Plaintiff Reynolds was in a car wreck and Progressive Direct deemed her vehicle to be a total loss.

12.     Plaintiff Penn, at all relevant times, was an Alabama citizen. At all relevant times, Plaintiff Penn was contracted with Progressive Specialty for automobile insurance. On or about November 23, 2018, a vehicle covered under Plaintiff Penn's policy was damaged in a car wreck and Progressive Specialty deemed the vehicle to be a total loss.

13.     Defendant Progressive Direct has its corporate headquarters at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143. Progressive Direct issues insurance policies in Alabama and is registered with the Alabama Department of Insurance. At all relevant times, Progressive Direct conducted business in Alabama through insurance agents and other company personnel.

14.     Defendant Progressive Specialty has its corporate headquarters at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143. Progressive Specialty issues insurance policies in Alabama and is registered with the Alabama Department of Insurance. At all relevant times, Progressive Specialty conducted business in Alabama through insurance agents and other company personnel.

## JURISDICTION AND VENUE

15.     Minimal diversity exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(a)-(b), and 1453. Plaintiffs and the proposed class members are citizens of the State of Alabama. Defendants are Ohio Corporations that have their corporate headquarters

in Ohio, and, at all relevant times hereto, were engaged in the business of marketing and selling insurance policies and adjusting insurance claims in the State of Alabama.

16.     Plaintiffs estimate that there are more than 100 putative class members, and the aggregate compensatory damages (in the amount of the Projected Sold Adjustment that were deceptively deducted), claimed by Plaintiffs and the Classes is estimated in good faith to exceed $5,000,000.00.

17.     Venue is proper in this District under 28 U.S.C. § 1391, as a substantial portion of the conduct giving rise to Plaintiffs' claims occurred in this District, and Defendants transact business in this District.

## FACTUAL ALLEGATIONS

**<u>Defendants' Systemic Application of Projected Sold Adjustments</u>**

18.     On February 21, 2017, Plaintiff Reynolds was in a car wreck and sustained physical damage to her vehicle. At the time of the car wreck, Plaintiff Reynolds was contracted with Progressive Direct.

19.     On November 23, 2018, a vehicle covered under Plaintiff Penn's policy was damaged in a car wreck. At the time of the car wreck, Plaintiff Penn was contracted with Progressive Specialty.

20.     Like all members of the putative Classes, Plaintiffs made a property damage claim to Defendants.

21.     Pursuant to its uniform policies and procedures, Defendants declared Plaintiffs' vehicles to be a total loss and purported to pay them the ACV of their loss vehicles, as they promised and represented they would under the uniform provisions of their insurance policies and Alabama law.

22.     When calculating its valuations and claims payments, Defendants systemically employ a routine "total loss settlement process." This process involves obtaining a "Vehicle Valuation Report" from Mitchell and relying upon the valuation provided by Mitchell as the ACV amount owed under the policy. Defendant Progressive Direct provided a Mitchell Vehicle Valuation Report for Plaintiff Reynolds on February 24, 2017. *See* Exhibit B. Defendant Progressive Specialty provided a Mitchell Vehicle Valuation Report for Plaintiff Penn on December 3, 2018. *See* Exhibit C.

23.     The Mitchell Vehicle Valuation Reports used by Defendants during the relevant period followed the same process, provided and disclosed the same or substantially the same material information, and presented that material information in the same or substantially the same format. These valuation reports purport to contain values for comparable vehicles recently sold or for sale in the claimant's geographic area. The reports also contain a purported valuation for the loss vehicle based upattaon advertisements for comparable vehicles listed in the report. The report then adjusts the advertised prices of those comparable vehicles to account for differences in equipment, mileage, and vehicle configuration. Exhibit B at p. 11; Exhibit C at p. 8.

24.     In addition, however, the valuation reports used by Defendants make a further adjustment to each loss vehicle called a "Projected Sold Adjustment." For Plaintiff Reynolds, Projected Sold Adjustments in the amounts of -$759.00, -$739.00, -$760.00, -$783.00, -$863.00, -$850.00, -$864.00, -$829.00, and -$726.00 respectively, were applied to nine of the ten comparable vehicles. Exhibit B at pp. 6-10. For Plaintiff Penn, Projected Sold Adjustments in the amounts of -$944.00, -$840.00, -$1,115.00, -$1,120.00 respectively, were applied to the comparable vehicles. Exhibit C at pp. 5-7.

25.     Defendants provide no data specific to the comparable vehicles or any explanation

of industry practices in their valuation reports to support any Projected Sold Adjustment, much less the specific downward adjustments used in Plaintiffs' valuation reports. Instead, the only explanation is buried on the last page of each report, stating in full: "Projected Sold Adjustment – an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)." Exhibit B at p. 11; Exhibit C at p. 8.

26.     In truth, Defendants' Projected Sold Adjustments do not reflect market realities (the context in which "consumer behavior" occurs) and run contrary to customary automobile dealer practices and inventory management, where list prices are priced to market to reflect the intense competition in the context of Internet pricing and comparison shopping. Before the ubiquity of online advertising and shopping, "advertised" prices had very little to do with eliciting car buyers to particular dealerships—instead, car buyers generally went to their local used car dealership that had the desired vehicle in stock for sale. The "advertised" price was simply whatever price was listed on the physical window. And consumers could not, as they can now, easily compare that price to Internet advertisements of the same vehicle offered by competitors.

27.     As such, dealerships generally priced vehicles above market knowing that some consumers might be poor negotiators and they would realize an inflated profit on those sales. This above-market "window" price obviously allowed for negotiation, and a downward negotiation would often occur.

28.     But during the Class Period, that is simply no longer how the used car market operates. Now, given the need for Internet advertising, the prevalence of Internet shopping and consumer behavior, developments in sophisticated pricing software universally used by car dealerships, and the ease with which consumers can compare the advertised prices of identical vehicles across multiple competing dealerships, used car dealerships no longer price vehicles

above market with room for—and the expectation of—negotiation. Instead, car dealerships use sophisticated pricing software—which provides the advertised prices of all competitors; the average "turn" of a given year, make and model; the amount for which vehicles have sold during a given time-period; etc.—and now appraise vehicles before acquiring them to price them to market and do not negotiate from that price.

29.     This makes sense, because if a car dealership priced a vehicle above market with room for negotiation, consumers would simply not go to that dealership. This is because consumers can easily compare advertised prices and would seek out the vehicle priced to market, rather than the same vehicle priced at a higher amount (i.e., above market). Given the choice between paying less or paying more for an identical vehicle, consumers will choose to pay less.

30.     As such, a negotiated discount off the cash price is highly atypical and is not proper to include in determining ACV. The inclusion of this significant downward adjustment purportedly to "reflect consumer purchasing behavior" is particularly improper in the context of this action—insureds who have suffered a total loss of their vehicle and need to procure a replacement have limited time to search out the illusory opportunity to obtain the below-market deal Defendants assume always exists without any explanation or support.

31.     Defendants' Projected Sold Adjustments are contrary to appraisal standards. There are multiple generally-recognized and acceptable methodologies for determining ACV, including use of comparable vehicles. Defendants begin the process of valuing loss vehicles using comparative methodology but improperly deviate from that process by thumbing the scales against the insured. Defendants document the loss vehicle's and each comparable vehicle's mileage, options, and trim, which are compared in the report, and makes dollar adjustments accordingly. Plaintiffs do not challenge these documented adjustments. At this stage of the process, however,

Defendants abandon the comparative methodology and applies adjustments that are contrary to proper appraisal methodologies for determining ACV. Appraisers use advertised prices and make adjustments based only on observed and verifiable data; appraisal standards do not permit arbitrary adjustments from the advertised price based upon undocumented and unverifiable projections.

32.     Defendants thumb the scale by discarding vast amounts of relevant data that contradict applying a Projected Sold Adjustment and by failing to control for material variables, including whether there were ancillary purchases or transactions that may influence what is recorded as the "sales price" but do not influence the ACV (e.g., whether the customer traded in a vehicle at the time of purchase, bought an extended warranty or service plan, or financed the purchase).

33.     Until July 2021, Defendants excluded from the calculation of the Projected Sold Adjustment all transactions in which the list price of a vehicle equaled the sold price.

34.     Even after July 2021, Defendants still exclude some transactions in which the list price of a vehicle equals the sold price.

35.     Defendants have excluded and continue to exclude from the calculation of the Projected Sold Adjustment all transactions in which the sold price of a vehicle is greater than the list price.

36.     Without having performed any investigation or study, Defendants simply assume all such transactions are anomalies.

37.     Likewise, Defendants have not exercised even a modicum of curiosity to investigate whether market realities support the application of a Projected Sold Adjustment. Nor do Defendants or their vendors attempt to verify—even a single time—for those transactions where the advertised price exceeded sold price, whether the reason for the reduction was negotiation of

the cash price of the vehicle and not some other (far more likely) reason, some of which are discussed herein.

38.     Neither Progressives' form Policies nor Alabama law permit reducing a vehicle's value for invented or arbitrarily assumed justifications.

39.     Moreover, the accuracy of Defendants' data is, at best, suspect, as it contains a significant number of transactions where the advertised date in the database comes after the sold date. As a matter of simply chronology, it makes no sense to advertise a vehicle after it is sold. But here, too, Defendants make no effort to control for this obvious flaw in the data.

40.     These irremediable, and unjustifiable, errors, of course, skew the data in favor of Defendants to the detriment of their insureds.

41.     Moreover, examples abound demonstrating the glaring error of Defendants' cherry-picking practices.

42.     For example, related to the exclusion of sales prices greater than list prices, all advertised prices for comparable vehicles listed in Defendants' valuation reports are scraped from Internet sources—specifically Cars.com, Autotrader.com, Vast.com, and TrueCar.com.

43.     The advertised prices many dealerships publish on these websites include discounts for consumers who are financing and providing a trade-in. Thus, a consumer who was not financing the vehicle through the dealership or who was not trading in a vehicle—obviously, insureds who sustained a total loss almost certainly are not trading a vehicle when purchasing a replacement vehicle—would have to pay in cash more than the price listed on sources where Mitchell scrapes advertisements for comparable vehicles. In determining the actual cash value of Plaintiffs' and class members' totaled vehicles, there is no justification for Defendants to have excluded those transactions from calculating the Projected Sold Adjustment, while only including

transactions where the sold price was recorded as less than the list price.

44.     Simply put, there is no justification for Defendants to exclude such transactions as outliers or mistakes when justifying how they calculate the amount of the so-called Projected Sold Adjustments.

45.     Doing so serves only to skew the data to meet Defendants' unjustified, unsupported, and uninvestigated assumption that the list price of comparable vehicles should always be reduced to pay insureds less.

46.     Defendants further fail to control whether the vehicle was purchased with discounts unavailable to the public (e.g., employee discounts).

47.     Defendants also fail to control for whether the vehicle was purchased with cash, or whether there were ancillary purchases or transactions that may influence the recorded "sales price" but not the ACV (e.g., whether the customer traded in a vehicle at the time of purchase, bought an extended warranty or service plan, or financed the purchase).

48.     In these instances, the ACV of the vehicle remains its price to market; the dealership simply transferred the anticipated profit through either the sale of an optional ancillary product or by reducing what it would have offered in trade-in value.

49.     The impropriety and arbitrariness of Defendants' Projected Sold Adjustments are further demonstrated by the fact that Mitchell's primary competitor in providing valuation reports to insurance companies—CCC Intelligent Solutions, Inc.—does not apply projected sold adjustments in this manner. Instead, CCC Intelligent Solutions uses list prices.

50.     On information and belief, the impropriety and arbitrariness of Defendants' Projected Sold Adjustments are further demonstrated by the fact that Progressive does not apply these adjustments when determining the ACV of total losses in California or Washington. There

is no justification for applying these adjustments when valuing total losses in Alabama while not subjecting California and Washington insureds to the same negative adjustments.

51.     Plaintiffs and each member of the proposed Classes were damaged by Defendants' application of these Projected Sold Adjustments because they were not paid the ACV they would have received had Defendants applied proper methodologies and appraisal standards.

52.     Were it not for this improper adjustment, the "Base Value" in each valuation report would have been higher, resulting in a higher "settlement value" and in turn a higher payment by Defendants for ACV. Specifically, for Plaintiff Reynolds, were it not for this improper adjustment, the payment of ACV by Defendant Progressive Direct would have been $717.30 higher, before adding the related increase in payments for applicable sales taxes. For Plaintiff Penn, were it not for this improper adjustment, the payment of ACV by Defendant Progressive Specialty would have been $1,004.75 higher, before adding the related increase in payments for applicable sales taxes.

## CLASS ACTION ALLEGATIONS

53.     Plaintiffs bring this action individually and as a class action under Fed. R. Civ. P 23(a) and (b), on behalf of the following proposed Classes:

> **Progressive Direct Class:** All Alabama citizens insured by Progressive Direct who, from the earliest allowable time through the date an Order granting class certification is entered, received compensation for the total loss of a covered vehicle, where that compensation was based on a vehicle valuation report prepared by Mitchell and the ACV was decreased based upon Projected Sold Adjustments to the comparable vehicles used to determine ACV.

> **Progressive Specialty Class:** All Alabama citizens insured by Progressive Specialty who, from the earliest allowable time through the date an Order granting class certification is entered, received compensation for the total loss of a covered vehicle, where that compensation was based on a vehicle valuation report prepared by Mitchell and the ACV was decreased based upon the Projected Sold Adjustments to the comparable vehicles used to determine ACV.

54.     Plaintiff Reynolds is the proposed class representative for the Progressive Direct Class, and Plaintiff Penn is the proposed class representative for the Progressive Specialty Class. Excluded from the Classes are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Judge(s) and Court staff assigned to this case and their immediate family members.

55.     Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that the Classes should be expanded or narrowed, divided into additional subclasses, or modified in any other way.

56.     **Numerosity.** The members of the Classes are so numerous that individual joinder of all members of the Classes is impracticable. While Plaintiffs are informed and believe that there are thousands of members in the Classes, the precise number is unknown to Plaintiffs but may be ascertained from Defendants' books and records. Members of the Classes may be notified of the pendency of this action by recognized Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

57.     **Commonality and Predominance.** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

      a.  Whether Defendants systemically used Mitchell's Vehicle Valuation Reports in adjusting total loss claims to determine ACV;

      b.  Whether the Mitchell Vehicle Valuation Reports included Projected Sold Adjustments to the value of the comparable vehicles that reduced the base value, and thus the claim amount paid by Defendants for the ACV of Plaintiffs' and Class members' total loss vehicles;

    c.    Whether Defendants' improper practices injured Plaintiffs and members of the Classes;

    d.    Whether Defendants' acts violated its obligations under the policy of insurance;

    e.    Whether Plaintiffs and the Classes are entitled to compensatory damages, and if so, the calculation of damages; and

    f.    Whether Plaintiffs and Class members are entitled to an injunction restraining Defendants' future acts and practices.

58.    **Typicality.** The claims of the Plaintiffs, who are the representative of the Classes herein, are typical of the claims of the proposed Classes, in that the claims of all members of the proposed Classes, including the Plaintiffs, depend on a showing of the acts of Defendants giving rise to the right of Plaintiffs to the relief sought herein. There is no conflict between the individually named Plaintiffs and the other members of the proposed Classes with respect to this action, or with respect to the claims for relief set forth herein.

59.    **Adequacy of Representation.** Plaintiffs are adequate representatives of the Classes because Plaintiffs' interests do not conflict with the interests of the other Class members whom they seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds. The interests of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

60.    **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other members of the Classes are relatively small compared to the

burden and expense that would be required to individually litigate their claims against Defendants, such that it would be impracticable for the members of the Classes to individually seek redress for Defendants' wrongful conduct. Even if the members of the Classes could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
(ON BEHALF OF PLAINTIFF REYNOLDS
AND THE PROGRESSIVE DIRECT CLASS)

61.     Plaintiffs hereby repeat and reallege all preceding paragraphs contained herein.

62.     Plaintiff Reynolds made a claim for property damage on her Progressive Direct insurance policy.

63.     At the time of her claim, and in the time since, Plaintiff Reynolds has performed all obligations under her policy of insurance and was entitled to the benefits she contracted for in her policy.

64.     Through the use of improper and unfounded Projected Sold Adjustments in Mitchell vehicle valuation reports, as detailed above, Defendant Progressive Direct handled, adjusted, and paid Plaintiff Reynolds's claim, and the claims of the members of the proposed Progressive Direct Class, for less than the actual cash value required by the insurance contract.

65.     As a direct result of Defendant Progressive Direct's breaches, Plaintiff Reynolds and members of the Progressive Direct Class sustained actual damages. Plaintiff Reynold's damages are at least $717.30 (before calculation of additional sales tax benefits), plus pre-

judgment and post-judgment interest.

## SECOND CAUSE OF ACTION
### BREACH OF CONTRACT
(ON BEHALF OF PLAINTIFF PENN
AND THE PROGRESSIVE SPECIALTY CLASS)

66.     Plaintiffs hereby repeat and reallege all preceding paragraphs contained herein.

67.     Plaintiff Penn made a claim for property damage on her Progressive Specialty insurance policy.

68.     At the time of her claim, Plaintiff Penn was party to an insurance contract requiring Progressive Specialty to handle, adjust, and pay insureds the actual cash value of their total loss claim.

69.     Before making her claim, and in the time since, Plaintiff Penn has performed all obligations under her policy of insurance and was entitled to the benefits she contracted for in her policy.

70.     Through the use of improper and unfounded Projected Sold Adjustments in Mitchell vehicle valuation reports, as detailed above, Defendant Progressive Specialty handled, adjusted, and paid Plaintiff Penn's claims, and the claims of the members of the proposed Progressive Specialty Class, for less than the actual cash value required by the insurance contract.

71.     As a direct result of Defendant Progressive Specialty's breaches, Plaintiff Penn, and members of the Progressive Specialty Class sustained actual damages. Plaintiff Penn's damages are at least $1,004.75 (before calculation of additional sales tax benefits), plus pre-judgment and post-judgment interest.

### THIRD CAUSE OF ACTION
### DECLARATORY JUDGMENT
(ON BEHALF OF PLAINTIFF REYNOLDS
AND THE PROGRESSIVE DIRECT CLASS)

72.     Plaintiffs hereby repeat and reallege all preceding paragraphs contained herein.

73.     A judiciable dispute between Plaintiff Reynolds and the proposed Progressive Direct Class and Defendant Progressive Direct is before this Court under 28 U.S.C. § 2201, *et seq.*, concerning the construction of the auto insurance policies issued by Defendant Progressive Direct and the rights arising under those policies.

74.     Plaintiff Reynolds, for herself and on behalf of the Progressive Direct Class, seeks a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff Reynolds is seeking a declaration that in paying total loss claims with first-party insureds, it is a breach of the insurance contract with Progressive Direct for Progressive Direct to base the valuation and payment of claims on values of comparable vehicles that have been reduced by factually erroneous Projected Sold Adjustments.

75.     Progressive Direct's unlawful common policy and general business practice of applying Projected Sold Adjustments is ongoing. Accordingly, Progressive Direct has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiff Reynolds and members of the Progressive Direct Class requiring it to settle total loss claims on the basis of the total loss vehicle's actual cash value.

76.     As a result of these breaches of contract, Plaintiff Reynolds and the proposed Progressive Direct Class members have been injured. Plaintiff Reynolds's and proposed Progressive Direct Class members' damages include the amounts illegally deducted by Progressive Direct from the insureds' payments.

77.     Plaintiff Reynolds seeks a declaration that Progressive Direct's application of

unfounded Projected Sold Adjustments results in a valuation of less than the actual cash value Progressive Direct is required under its insurance contracts to pay insureds.

**FOURTH CAUSE OF ACTION**
**DECLARATORY JUDGMENT**
(ON BEHALF OF PLAINTIFF PENN
AND THE PROGRESSIVE SPECIALTY CLASS)

78.     Plaintiffs hereby repeat and reallege all preceding paragraphs contained herein.

79.     A judiciable dispute between Plaintiff Penn and the proposed Progressive Specialty Class and Defendant Progressive Specialty is before this Court under 28 U.S.C. § 2201, *et seq.*, concerning the construction of the auto insurance policies issued by Defendant Progressive Specialty and the rights arising under those policies.

80.     Plaintiff Penn, for herself and on behalf of the Progressive Specialty Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff Penn is seeking a declaration that in paying total loss claims with first-party insureds, it is a breach of the insurance contract with Progressive Specialty for Progressive Specialty to base the valuation and payment of claims on values of comparable vehicles that have been reduced by factually erroneous Projected Sold Adjustments.

81.     Progressive Specialty's unlawful common policy and general business practice of applying Projected Sold Adjustments is ongoing. Accordingly, Progressive Specialty has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiff Penn and members of the Progressive Specialty Class requiring it to settle total loss claims on the basis of the total loss vehicle's actual cash value.

82.     As a result of these breaches of contract, Plaintiff Penn and the proposed Progressive Specialty Class members have been injured. Plaintiff Penn's damages and proposed Progressive Specialty Class members' damages include the amounts illegally deducted by

Progressive Specialty from the insureds' payments.

83.     Plaintiff Penn seeks a declaration that Progressive Specialty's application of unfounded Projected Sold Adjustments results in a valuation of less than the actual cash value Progressive Specialty is required under its insurance contracts to pay insureds.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

a)      determine that this action may be maintained as a class action under Federal Rule of Civil Procedure 23, certify the proposed Classes for class treatment, appoint Plaintiffs as class representative for the Classes, and appoint undersigned counsel as Class Counsel;

b)      enter an order finding that Defendants' actions described herein constitute breaches of the express terms of its policies of insurance;

c)      award Plaintiffs and members of the Classes actual damages according to proof;

d)      enter a declaratory judgment that in paying total loss claims with first-party insureds, it is a breach of the insurance contract with Defendants for Defendants to base the valuation and payment of claims on values of comparable vehicles that have been reduced by Projected Sold Adjustments;

e)      enter further belief based on the declaratory judgment including an order enjoining Defendants from basing the valuation and payment of claims on values of comparable vehicles that have been reduced by Projected Sold Adjustments;

f)      award pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

g)   award reasonable attorney's fees and litigation costs and expenses pursuant to applicable law; and

h)   grant such other legal and equitable relief as the Court may deem appropriate, including specific performance as an alternative to damages.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues so triable.

Dated: March 21, 2023                    Respectfully submitted,

**CARNEY BATES & PULLIAM, PLLC**

*/s/ Hank Bates*
Hank Bates (*pro hac vice*)
Lee Lowther (*pro hac vice*)
519 W. 7th St.
Little Rock, AR 72201
Tel: (501) 312-8500
Fax: (501) 312-8505
Email: hbates@cbplaw.com
Email: llowther@cbplaw.com

**BAILEY & GLASSER LLP**
David L. Selby II
Alabama Bar No. ASB-6994-Y62D
3000 Riverchase Galleria
Suite 905
Birmingham, AL 35244
Tel: (205) 988-9253
Fax: (205) 733-4896
Email: dselby@baileyglasser.com
Email: vpierre@baileyglasser.com

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.
Florida Bar No. 101754
14 NE 1st Ave., Suite 705
Miami, FL 33132
Tel: (305) 479-2299
Email: ashamis@shamisgentile.com

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
Christopher Gold, Esq.
Florida Bar No. 088733
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Tel: (786) 289-9471
Direct Tel: (305) 975-3320
Fax: (786) 623-0915
Email: scott@edelsberglaw.com
Email: chris@edelsberglaw.com

*Counsel for Plaintiffs and the Proposed Classes*

## <u>CERTIFICATE OF SERVICE</u>

I, Hank Bates, hereby certify that on this date, March 21, 2023, I filed the foregoing with the Clerk of the Court via the Court's electronic filing system, which will provide electronic mail notice to all counsel of record.

/s/ Hank Bates
Hank Bates