FILED
2025 May-12 PM 09:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| LAUREN REYNOLDS and LAURI PENN, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 5:22-cv-00503-LCB |
| v. | |
| PROGRESSIVE DIRECT INSURANCE COMPANY, an Ohio Corporation, and PROGRESSIVE SPECIALTY INSURANCE COMPANY, an Ohio Corporation, | |
| Defendants. | |

## PLAINTIFFS' UNOPPOSED MOTION FOR
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
## AND CERTIFICATION OF SETTLEMENT CLASS

Plaintiffs Lauren Reynolds ("Reynolds"), and Lauri Penn ("Penn") (collectively "Plaintiffs"), individually and on behalf of the Settlement Classes, file this Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class. Defendants Progressive Direct Insurance Company ("Progressive Direct") and Progressive Specialty Insurance Company ("Progressive Specialty") (collectively, "Progressive" or "Defendants") do not oppose this Motion.[1]

## I.    INTRODUCTION

After three years of hard-fought litigation, Plaintiffs are pleased to announce that the parties have reached a settlement. Under their agreement, Alabama citizens who had insurance with any Progressive entity that underwrites policies in the State will have an opportunity to recover 100% of the PSA deduction damages, tailored to their specific vehicle, with an average cash payment of $533. All of Class Counsel's attorney's fees and expenses and all notice and settlement administration expenses will be paid separately by Progressive and will not diminish Class Members' recoveries whatsoever. Absent settlement, this class action was approaching a jury trial set to commence on August 4, 2025. The Settlement was the result of an in-

---

[1] Unless otherwise stated or defined: (a) all capitalized terms used herein have the meanings provided in the Class Action Settlement Agreement (the "Agreement") filed contemporaneously herewith; and (b) all internal citations and footnotes are omitted and all emphasis is added unless otherwise noted.

person mediation session on April 16, 2025, overseen by Steve R. Jaffe, an experienced and respected mediator with Upchurch Watson White & Max.

The Settlement was made possible only through years of hard-fought litigation against a Fortune 100 company and settled on the eve of trial. Plaintiffs brought this action alleging Progressive breached their insurance contract—specifically the provision that actual cash value ("ACV") "is determined by the market value, age, and condition" of a vehicle at the time of loss—by applying Projected Sold Adjustments ("PSA") as part of the process of calculating ACV. Progressive mounted a vigorous defense, which required Plaintiffs to (i) achieve contested class certification, which included reports and testimony from experts in the fields of the automotive industry, statistics, and property appraisals, (ii) defend Progressive's motion for summary judgment; (iii) defend Progressive's motions to exclude their expert witnesses, (iv) challenge Progressive's expert's testimony, and (vi) engage in in significant pre-trial preparations and proceedings. Further, Class Counsel has been litigating cases across the country in other states against Progressive which asserted materially similar claims.

In the lead up to trial, the parties participated in extensive mediation efforts with well-respected mediator Steve R. Jaffe. Before Settlement was achieved, Plaintiffs and their counsel were fully informed about the strengths and weaknesses of their claims and Progressive's defenses. As a result of these negotiations,

18

Plaintiffs' Counsel obtained a Settlement that assures all Progressive insureds may recover damages related to the PSA Impact to the ACV payments for their total loss vehicles.

The proposed Notice Program is robust, providing individualized notice up to six times—three postcard notices and three email notices[2]—to each Settlement Class Member identified through discovery and Progressive's claims data.[3] By providing multiple mailed and emailed notices, the Notice Program will ensure that every Settlement Class Member has a full and fair opportunity to evaluate the Settlement and submit a claim. Each notice will include the average amount Settlement Class Members will recover. And participation could not be simpler. The postcard notices will include a detachable, pre-filled claim form (postage prepaid) requiring only confirmation that the pre-filled information is correct. The email notices will include a link to a pre-filled electronic version of the same simple claim form. Further, Class Counsel will request attorneys' fees not to exceed 22.5% of the total amount of funds made available to the Settlement Classes and reimbursement of litigation expenses not to exceed $90,000. Because Progressive has agreed to separately pay attorneys' fees (subject to Court approval), litigation costs, and the expenses of notice and

---

[2] To ensure that the Notice Program is robust, Class Counsel agreed to pay separately for the third postcard and third email notices.

[3] If a Class Member makes a claim after receiving the first round of notice, he or she will not receive rounds two and three.

administration—without reducing the payments to Settlement Class Members—these amounts constitute additional benefits to the Class and further support the Settlement's approval.

Plaintiffs contend certification of the Settlement Classes (which are identical to the class certified by the Court in this Action, except that the end of the Class period will be date the Order of Preliminary Approval is entered rather than the date of class certification) is appropriate for the reasons previously articulated by this Court in its order granting class certification. Similarly, the appointments of Plaintiffs as the Settlement Class Representatives and of Class Counsel as Class Counsel for the Settlement Classes are appropriate, and this Court should affirm these appointments.

"Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *Agnone v. Camden Cty*., 2018 U.S. Dist. LEXIS 175522, at *22 (S.D. Ga. Oct. 10, 2018). The proposed Settlement here was negotiated at arm's length and is in every respect fair, adequate, reasonable, and in the best interests of the proposed Classes. Class Counsel believes this is an excellent result.

Upon finding that a proposed settlement is preliminarily acceptable, the Court would direct that prompt notice be distributed to Settlement Class Members,

providing them with an opportunity to be heard and potentially object to the Settlement at a final approval hearing, to be scheduled by the Court. Accordingly, Plaintiffs and Class Counsel request that the Court enter the proposed Preliminary Approval Order so that notice may be promptly disseminated to the Settlement Class and a Final Approval Hearing and other Settlement-related dates may be scheduled.

## II.    PROCEDURAL HISTORY OF THE ACTION

This Settlement is proposed on behalf of two Settlement Classes[4] defined as follows:

> **Progressive Direct Class**: All persons who made a first-party claim on a personal automobile policy of insurance issued by Progressive Direct Insurance Company to an Alabama resident where the claim was submitted from April 20, 2016, through the date of Preliminary Approval is entered, and Progressive determined that the vehicle was a total loss and based its claim payment on an Instant Report from Mitchell where a Projected Sold Adjustment was applied to at least one comparable vehicle
>
> **Progressive Specialty Class**: All persons who made a first-party claim on a personal automobile policy of insurance issued by Progressive Specialty Insurance Company to an Alabama resident where the claim was submitted from April 20, 2016, through the date of Preliminary Approval is entered, and Progressive determined that the vehicle was a total loss and based its claim payment on an Instant Report from Mitchell where a Projected Sold Adjustment was applied to at least one comparable vehicle.

Plaintiff Reynolds filed her class action complaint on April 20, 2022. *See*

---

[4] Excluded from the Classes are Defendants and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Judge(s) and Court staff assigned to this case and their immediate family members.

Declaration of Hank Bates ¶ 3. The complaint went through several iterations, with an additional plaintiff, Lauri Penn, being added on behalf of an additional Progressive entity, and some claims being narrowed in response to Progressive's motions to dismiss. *Id*. After Defendant filed its answer, the parties engaged in discovery and, on July 26, 2023, Plaintiff moved for class certification. *Id*. The Motion for Class Certification was supported with voluminous evidence, including four expert reports. *Id*. Defendant opposed the motion, supported by reports of its own experts, among other evidence. *Id*. Plaintiffs filed their reply in support of the Motion for Class Certification on April 25, 2024. *Id*.

The Court heard oral argument concerning the Motion for Class Certification on March 7, 2024. *Id*. ¶ 4. A few weeks later, the Court entered a comprehensive order granting class certification. *Id*.  The Court found that the proposed classes meet every requirement of Federal Rule of Civil Procedure of 23(a) and 23(b)(3), including that the Class is sufficiently numerous and ascertainable, Plaintiffs Reynolds and Penn are adequate and typical Class members, that common issues predominate concerning the contractual claims, and that a class action is a superior method of adjudicating the controversy. *Id*. The Court later entered orders appointing Plaintiffs' Counsel as Class Counsel and approving the Notice Plan. *Id*.

After the Court certified the classes, the parties engaged in additional substantive motion practice. *Id*. ¶ 5. Plaintiffs moved to exclude the expert testimony

of Progressive's experts Jonathan Walker and Marc Spizzirri, while Progressive moved to exclude the expert testimony of Plaintiffs' experts Kirk Felix, Jeffrey Martin, Dr. Michelle Lacey, and Jason Merritt. *Id*. These motions were fully briefed. *Id*. Progressive also moved for summary judgment, which Plaintiffs opposed. *Id*.

With these many motions pending, the Court set a jury trial to begin in April 2025, which it continued to August 4, 2025, on Progressive's opposed motion. *See Id*. ¶ 6.

In March 2025, the parties agreed to participate in a confidential settlement mediation. *Id*. ¶ 7. The mediation included both Plaintiffs. *Id*. To prepare for mediation, Class Counsel undertook an extensive and thorough review of the voluminous data produced by Progressive concerning all Settlement Class Members and the data supporting calculation of the PSA Impact Amount. *Id*. Using its analysis of this data and other information gained in discovery, Class Counsel prepared a detailed mediation brief that set forth Plaintiffs' legal and factual positions. *Id*. This rigorous preparation ensured that Plaintiffs entered mediation with a fully developed, data-driven strategy aimed at achieving a fair and informed resolution for the Classes. *Id*.

Finally, on April 16, 2025, the parties participated in a full-day mediation with Steven R. Jaffe, an experienced mediator, and the parties negotiated a term sheet. *Id*. ¶ 8. Following the mediation, the parties finalized the Settlement Agreement that

Plaintiffs now move unopposed for the Court to approve. *Id*. ¶ 9.

### III.    SUMMARY OF THE SETTLEMENT TERMS

The Agreement should be approved because it is fair, reasonable, and adequate, not the subject of collusion. Fed. R. Civ. P. 23(e)(2); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1265 (11th Cir. 2021).

### A. The Agreement Provides 100% Payment of the PSA Impact Amount.

The Agreement provides payment of 100% of the amount alleged to be owed Plaintiffs and all Settlement Class Members who submit a claim (the "PSA Impact Amount"). Bates Decl. ¶ 16. The cash benefit available to all Settlement Class Members in the Settlement is approximately $30,748,947, which represents 100% of the compensatory damages alleged by Plaintiffs under the damages model they were prepared to present at trial. *Id*. ¶.

The PSA Impact Amount is 4.31% of the ACV of each Settlement Class Member's total loss vehicle. *Id*. ¶ 17. That ACV amount is reflected in Progressive's data under the column "Valuation_ACVAmt." *Id*. The PSA Impact Amount is uniformly applied to each Settlement Class Member in an equal manner. *Id*. Progressive will pay 100% of the PSA Impact Amount to Settlement Class Members who submit a valid claim. *Id*. ¶ 18.

### B. The Agreement Provides Robust Notice and Easy Claim Submission.

The Settlement assures that all Settlement Class Members have multiple

opportunities to receive notice and submit a claim through both physical mail and email. A robust notice plan is evidence that the terms of settlement are fair and reasonable. *See Braynen v. Nationstar Mortg.*, LLC, 2015 WL 6872519, at *18 (S.D. Fla. Nov. 9, 2015).

First, all Settlement Class Members will receive a postcard notice with a detachable pre-filled, return addressed, and pre-paid postage claim form to simply sign and place in the mail. Bates Decl. ¶ 27. The claim form attached to the postcard notice does not require the insured to provide any information other than to sign the claim form and provide a corrected address if needed. *Id*. ¶ 29. The Agreement also requires a second postcard notice in the same form that also includes a detachable pre-filled, return addressed, and pre-paid postage form to simply sign and place in the mail. Bates Decl. ¶ 27–28. Prior to sending postcard notices to any Settlement Class Members, the Settlement Administrator shall attempt to update the last known addresses of the Settlement Class Members through the National Change of Address system or similar databases. *Id*. ¶ 28.  Further, a skip trace shall be conducted for all returned postcards and reissued to any new current address located. *Id*.

Second, all Settlement Class Members for whom Progressive has an email address will receive up to three email notices. *Id.* ¶ 27. Prior to sending Email Notice to any Settlement Class Members, a skip trace for current email addresses shall be performed for the most current email address which notice will be sent to that email

address and the email address of record. *Id.* ¶ 29. The email notice shall include a link to a pre-filled electronic Claim Form. *Id.* The Claim Form will require only that the claimant confirm he or she is the policyholder or otherwise entitled to payment. *Id.*

Members of the Settlement Class may alternatively submit claim forms online electronically with a "Submit a Claim" button at the Settlement Website by providing one of the following in addition to their name and address: 1) the unique claim number found on the Notices; or 2) the claim number associated with the Total Loss. *Id.* ¶ 32.

The Agreement requires a long form notice and other important case documents to be available to class members on the settlement website. *Id.* The Agreement also provides for a toll-free number for class members to submit questions and request additional information. *Id.* ¶ 33.

### C. The Agreement Provides Reasonable Attorneys' Fees That Do Not Reduce Payments to Settlement Class Members and Reasonable Service Awards.

The Agreement provides that Class Counsel may apply for attorneys' fees and costs not to exceed 22.5% of the total amount of funds made available to the Settlement Classes and reimbursement of litigation expenses not to exceed $90,000. *Id.* ¶ 44. Importantly, Progressive has agreed to pay these amounts separately, so they will not reduce payments to Settlement Class Members. *Id.* ¶ 19. Thus, the fees

and costs are an additional benefit to the Settlement Classes.

The percentage for attorney's fees of 22.5% is on the low end of the Eleventh Circuit's benchmark for attorneys' fees, which is 20–30% of the benefits to the class. *See Carter v. Forjas Taurus, S.A.,* 701 F. App'x 759, 767 (11th Cir. 2017) ("[I]n this circuit we have identified twenty to thirty percent of the common fund as a 'benchmark' for an attorney's fee award."); *see also In re Home Depot Inc.*, 931 F.3d 1065, 1076 (11th Cir. 2019) ("In this Circuit, courts typically award [attorneys' fees] between 20-30% [of the class benefit], known as the benchmark range.").

Class Counsel is entitled to a reasonable fee award from the common fund. *See* Fed. R. Civ. P. 23(h); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Lunsford v. Woodforest Nat'l Bank*, 2014 WL 12740375, at *11 (N.D. Ga. May 19, 2014). The Eleventh Circuit provides that the amount of attorneys' fees in common fund cases "shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I,* 946 F.2d 768, 774 (11th Cir. 1991).

Courts have long recognized the common fund doctrine, under which attorneys who create a recovery benefitting a group of people may be awarded their fees and costs from the recovery. *See, e.g., Van Gemert*, 444 U.S. at 478. The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec.*

*Lit.*, 727 F. Supp. 1201, 1203 (N.D. Ill. 1989). This doctrine also ensures that those who benefit from a lawsuit are not "unjustly enriched." *Van Gemert*, 444 U.S. at 478. The Eleventh Circuit has directed that the fee be based upon a percentage of the class benefit. *See Camden I*, 946 F.2d at 774-75. Courts have significant discretion in choosing the proper percentage. *Id.* at 774 ("There is no hard and fast rule … the amount of any fee must be determined upon the facts of each case."). Courts should look at factors such as the time at which settlement was reached, any substantial objections, the economics of class actions, the *Johnson* criteria, and any other "unique" circumstances. *Id.* at 775. The Eleventh Circuit prescribed that a fee award of 50 percent of the benefit is the upper limit; and that most fee awards fall between 20–30 percent. *Id.* at 774–75.

The Settlement Agreement further provides that Plaintiffs may request a service award for each Settlement Class Representative. Bates Decl. ¶ 45. Plaintiffs request a service award of no more than $10,000 for each Plaintiff, subject to approval by Court. *Id.* These service awards, which will be paid separately by Progressive, will compensate Plaintiffs for their time and effort serving as the Settlement Class Representatives through three years of litigation and up to the eve of trial. *Id.* The enforceability of the Settlement is not contingent on this Court's approval of Plaintiffs' requests for service awards. *Id.*

## IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASSES.

18

Plaintiffs seek to certify the Settlement Classes, which are identical to the Classes certified by the Court in this Action, *see* ECF No. 116 at 6–7, except that the end of the Class period will be the date of the Order of Preliminary Approval is entered rather than the date of class certification. Agreement ¶ 1.mm. Certification of the Settlement Classes is appropriate for the reasons previously articulated by this Court in its order granting class certification. Similarly, the appointments of Plaintiffs as the Settlement Class Representatives and of Class Counsel as Class Counsel for the Settlement Classes are appropriate, and this Court should affirm these appointments. *See* Bates Decl. ¶¶ 10–15 (describing Plaintiffs' and Class Counsel's role in prosecuting and settling this action).

For the sake of brevity, Plaintiffs respectfully refers the Court to the previously filed motion for class certification for a complete recitation of the arguments supporting class certification, as well as the Court's order granting class certification. Pursuant to Rule 23(a): (i) the Settlement Classes are so numerous that joinder of all members would be impracticable (ECF No. 116 at 14–15); (ii) there are questions of law or fact common to the Settlement Classes (*id*. at 15–18); (iii) the claims or defenses of Plaintiffs are typical of the claims or defenses of the Settlement Classes (*id*. at 18–19); and (iv) Plaintiffs and Plaintiffs' Counsel have – and will continue to – fairly and adequately protect the interests of the Settlement Class (*id*. at 19–22). Furthermore, as the Court previously determined, common questions predominate

concerning Plaintiffs' claims (*id.* at 22–37) and a class action is superior to other methods for fairly and efficiently adjudicating this controversy (*id.* at 38–40). Plaintiffs therefore respectfully request that the Court preliminarily certify the Settlement Classes for purposes of implementing the proposed Settlement, as other courts have done in similar circumstances. *See, e.g., South v. Progressive Direct Ins. Co.*, No. 1:19-cv-21760-WPD, ECF No. 248, at 3 (S.D. Fla. Nov. 16, 2022) ("This Court previously certified a class …. Other than certain immaterial alterations, the Parties propose a Settlement Class defined essentially the same as the classes previously certified by this Court …. For the purposes of determining whether the terms of the Proposed Settlement should be finally approved as fair, reasonable, and adequate, the [] Settlement Class is preliminary certified for settlement purposes only").

## V.    THE COURT SHOULD APPROVE NOTICE

Under Rule 23, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). This requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Here, the parties have negotiated the procedures for disseminating to all members of the Settlement Classes. *See* Bates Decl. Exs. A–E. The proposed Notices

apprise Settlement Class Members of (among other disclosures) the nature of the Action, the average amount of money each Settlement Class Members will recover, the claim at issue in the Action, their right to object to the Settlement or be excluded from it, that their claims will be released if they do nothing, and where they can go to obtain more information about the Settlement. Bates Decl. ¶ 31. The Notices also: (i) advise that a Settlement Class Member may enter an appearance through counsel; (ii) describes the binding effect of a judgment on Settlement Class Members; (iii) states the procedures and deadline for Settlement Class Members to object to the proposed Settlement and the requested attorneys' fees and expenses; and (iv) states the procedures and deadline for submitting a Claim Form to recover from the Settlement and for requesting exclusion. *Id.* Additionally, the Notices and Claim Form and other relevant documents will be posted on a dedicated Settlement website. *Id.* ¶ 32.

The proposed Notice Program is robust. Each Class Member will receive a minimum of two Mail Notices and two E-mail Notices, utilizing the mailing addresses and email addresses in Progressive's clam records. *Id.* ¶¶ 27–29. By providing multiple mailed and emailed notices, the Notice Program will make sure that every Settlement Class Member has a full and fair opportunity to evaluate the Settlement and submit a claim. Each notice will include the average amount each Settlement Class Member will recover. *Id.* ¶ 30. And participation could not be

easier. The postcard notices will include a detachable, pre-filled claim form (postage prepaid) requiring only confirmation that the information is correct. The email notices will include a link to a pre-filled electronic version of the same simple claim form. Notably, Progressive has agreed to separately pay the costs of sending the first two Mail Notices and E-mail Notices and claims administration, making this another benefit to the Settlement Classes. *Id.* ¶ 34.

Additionally, Class Counsel will send one more Mail Notice and one more E-Mail Notice to Settlement Class Members who have not yet made claims, reminding them to make a claim. *Id.* ¶ 35. The costs associated with sending the third Mail Notice and E-mail Notice will be paid for by Class Counsel. *Id.* Three postcard notices, three email notices, a longform notice, and a simplified and streamlined claim process is an unusually excellent process and is evidence of the fairness and reasonableness of the proposed Settlement. *See, e.g.*, *Braynen v. Nationstar Mortg., LLC*, 2015 WL 6872519, at *18 (S.D. Fla. Nov. 9, 2015) (robust notice plan is evidence that the terms of settlement are fair and reasonable).

Plaintiffs also request that the Court appoint Epiq Class Action & Claims Solutions, Inc. ("Epiq") as Claims Administrator to disseminate all notices approved by the Court to Settlement Class Members, process Claim Forms and administer the Settlement. Bates Decl. ¶ 25–26. Epiq is a recognized leader in legal administration services for class action settlements and legal noticing programs and has

implemented successful claims administration programs in many class actions. *Id.*

Thus, the form and manner of providing notice to the Settlement Class satisfy the requirements of due process and Rule 23. *See South v. Progressive Select Ins. Co.*, No. 1:19-CV-21760, ECF No. 258 (S.D. Fla. Apr. 23, 2024) (granting final approval to settlement with Progressive with similar notice program); *id.* at ECF No. 253-1 at 21–23 (describing notice program). The "proposed notice methods provide adequate notice to potential class members and explain, in sufficient detail, their individual rights under the settlement. Moreover, the claim forms are reasonable. Therefore, … the proposed Notice Plan is appropriate in both form and content and is due to be approved." *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2024 WL 4982979, at *24 (N.D. Ala. Dec. 4, 2024)

Indeed, Courts routinely approve the type of mailed notice provided here. For example, in *Davis v. GEICO Casualty Company*, 2:19-cv-02477-EAS-EPD, ECF No. 229 (S.D. Ohio Oct. 12, 2023), the Ohio Southern District Court approved a notice plan like the present one involving GEICO's failure to pay full ACV on total loss claims. The *Davis* settlement included two postcard notices and one email notice. *Id*. Here, there are three postcard notices and three email notices that will go to all Settlement Class Members, which is reasonably likely to reach most Settlement Class Members. *See McPheeters v. United Servs. Auto. Ass'n*, 1:20-cv-00414-MWM, Docket No. 98 (S.D. Ohio Dec. 5, 2022) (approving class action settlement

notice consisting of two postcard notices with detachable claim forms and website);

*Kinder v. Koch Industries, Inc.*, 1:20-CV-02973-MHC, 2021 WL 3360130, at *1

(N.D. Ga. July 30, 2021) (approving of claims made settlement with a single mailed

notice and no electronic claims submission); *McGaffin v. Argos USA, LLC*, 4:16-

CV-104, 2020 WL 1493929, at *2 (S.D. Ga. Mar. 24, 2020) (approving mail notice

and a reminder notice with internet website).

## VI.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT.

Preliminary approval is not binding, and "[a] proposed settlement should be

preliminarily approved if it is 'within the range of possible approval' or, in other

words, [if] there is 'probable cause' to notify the class of the proposed settlement."

*Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007)

(internal citations omitted). This is because preliminary approval is to ensure the

proposed settlement appears sufficiently fair and reasonable to justify notifying

Class Members and provide an opportunity to be heard prior to a full analysis at final

approval. Fed. R. Civ. P. 23(e)(1) (preliminary analysis of settlement is to

"determine whether to give notice of the proposal to the class," which is proper if it

is demonstrates "the court will likely be able to" approve the settlement).

As will be set forth in greater detail in the Motion for Final Approval – and as

demonstrated by the attached Agreement – all six factors used by courts to evaluate

the fairness and adequacy of a class action settlement strongly support approval here.

*See Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994) (outlining the six factors).

First, there was no fraud or collusion in the settlement. The settlement negotiations were conducted at arm's length, and settlement was reached to mediation, following lengthy negotiations. These facts weigh in favor of accepting the Settlement. *See Burrows v. Purchasing Power, LLC*, No. 1:12-cv-22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013); *In re United States Sugar, Corp. Litig.*, No. 08-80101-civ, 2010 WL 11505541, at *1 (S.D. Fla. Jan. 8, 2010) ("Where a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair."); 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 at 90 (4th ed. 2002).

Second, the complexity, expense, and likely duration support the settlement. The legal issues presented in both class certification and merits questions in this case were complex, involving substantial data and issues involving the PSA that are being hotly contested in courts across the country. Bates Decl. ¶¶ 20–22.

Third, the stage of the proceedings and amount of discovery completed support settlement. Plaintiffs propounded and Progressive responded to extensive discovery in this case. The Parties engaged in sophisticated data analysis and relied upon multiple expert witnesses. Class Counsel have extensive experience analyzing

Progressive's data, having resolved class action cases against Progressive concerning the PSA in the past. *See Volino v. Progressive Cas. Ins. Co.,*No. 1:21-cv-06243-LGS (S.D.N.Y.); *Brown v. Progressive Mountain Ins. Co.*, No. 3:21-cv-00175-TCV (N.D. Ga.). The Parties engaged in extensive motion practice right up to the eve of trial. Plaintiffs have a complete understanding of all issues in this litigation.

Fourth, the Plaintiffs' probability of ultimate success on the merits supports settlement. Class Counsel recognize that despite their belief in the strength of Plaintiffs' claims, the expense, duration, and complexity of protracted litigation would be substantial and the outcome uncertain. Bates Decl. ¶ 21. Plaintiffs still would have had to prevail at trial to recover. *Id.* Though Plaintiffs and Class Counsel strongly believe in the strength of their claims, Progressive was ready to mount an aggressive defense with experienced advocates. *Id.* Practically speaking, Progressive has a significant war chest and the ability to take this case through trial, judgment, and subsequent appeals.

Absent the proposed Settlement, Progressive would continue to challenge liability, would prepare a competent defense at trial, and would likely file a motion to decertify the Litigation Classes or appeal any judgment favorable to Plaintiffs, as well as appeal the Order granting class certification. *Id.* ¶ 22. There is a risk that the Eleventh Circuit would ultimately reverse this Court's ruling on class certification.

*Id.* Considering the risks and uncertainties of continued litigation, the proposed recovery is adequate.

Fifth, the range of possible recovery supports the settlement. As noted, the Agreement provides payment of 100% of the PSA Impact Amount. *Id.* ¶ 36. The Settlement resolved hotly contested issues in favor of the Settlement Class Members relating to whether the PSA may be applied and whether, even if it should not be applied, the ACV payments made to Settlement Class Members still fairly represented the ACV of their total loss vehicles.

Sixth, the opinions of Class Counsel and the class representatives support settlement.[5] It is the reasoned opinion of Class Counsel that settlement is in the interest the Settlement Classes and eliminates the risk of proceeding with litigation. Bates Decl. ¶¶ 20–24.

It is well-settled that a claims-made structure does not impact the "fairness, reasonableness, or adequacy of proposed settlement." *See, e.g., Hamilton v. SunTrust Mortg. Inc.*, 2014 WL 5419507, at *6 (S.D. Fla. Oct. 24, 2014) (quotations omitted). This type of settlement structure is regularly approved by courts in this Circuit. *See, e.g., Faught v. Am. Home Shield Corp.*, 668 F.3d 1233 (11th Cir. 2011)

---

[5] The sixth factor includes analysis of the substance and amount of opposition, which is irrelevant until after Notice and the opportunity to request exclusion or object is provided.

(upholding lower court's approval of class action settlement); *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902 (S.D. Fla. Apr. 13, 2016) (approving similar claims-made settlement in class action concerning lender-placed insurance).

The Agreement removes the risk of an adverse judgment or de-certification on appeal and requires full payment of 100% of the total damages Plaintiffs would have demanded at trial. And the Agreement provides Settlement Class Members with a simple and straightforward procedure to claim these payments. This is an excellent result meriting preliminary approval.

## VII.   CONCLUSION

Plaintiffs respectfully request that the Court grant Preliminary Approval of the Agreement and certify the Settlement Class, and enter the Proposed Order attached as Exhibit A. The Order approves the form of notice to be given to the class, establishes a schedule and process for the submission of any objections or requests for exclusion from the class, and provides for a fairness hearing to be held by the Court. Plaintiffs will request final approval of the settlement and file a motion for approval of attorneys' fees, costs, and separate Plaintiffs' settlement before the fairness hearing.

Dated: May 12, 2025                                  Respectfully submitted,

*/s/ Scott Edelsberg*
Scott Edelsberg*
**EDELSBERG LAW, P.A.**
20900 NE 30th Ave., Suite 417

Aventura, FL 33180
Tel: (786) 673-2405
scott@edelsberglaw.com


Hank Bates*
Lee Lowther*
**CARNEY BATES & PULLIAM, PLLC**
One Allied Drive, Suite 1400
Little Rock, AR 72202
Tel: (501) 312-8500
Fax: (501) 312-8505
hbates@cbplaw.com
llowther@cbplaw.com

Andrew Shamis*
Edwin Eliu Elliott*
**SHAMIS & GENTILE, P.A.**
14 NE 1st Street, Suite 705
Miami, FL 33132
Tel: (305) 479-2299
ashamis@shamisgentile.com
edwin@shamisgentile.com

David L. Selby II
Alabama Bar No. ASB-6994-Y62D
**BAILEY & GLASSER LLP**
3000 Riverchase Galleria, Suite 905
Birmingham, AL 35244
Tel: (205) 988-9253
Fax: (205) 733-4896
dselby@baileyglasser.com


Joshua R. Jacobson*
Jacob L. Phillips*
**JACOBSON PHILLIPS PLLC**
2277 Lee Rd, Ste. B
Winter Park FL, 32789

Tel: (321) 447-6461
joshua@jacobsonphillips.com
jacob@jacobsonphillips.com


\* admitted *pro hac vice*

*Counsel for Plaintiffs and the Classes*

## **CERTIFICATE OF SERVICE**

I, Scott Edelsberg, hereby certify that on this 12th day of May 2025, I electronically filed the foregoing via the Court's CM/ECF system, which will provide electronic notification to all counsel of record.


*/s/ Scott Edelsberg*
Scott Edelsberg (*pro hac vice*)
Attorney for Plaintiffs