IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| LAUREN REYNOLDS and LAURI PENN, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>PROGRESSIVE DIRECT INSURANCE COMPANY, an Ohio Corporation, and PROGRESSIVE SPECIALTY INSURANCE COMPANY, an Ohio Corporation,<br><br>　　　　Defendants. | Case No. 5:22-cv-00503-LCB |

**DECLARATION OF HANK BATES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

I, Hank Bates, declare and state as follows:

1.　I am a partner at Carney Bates & Pulliam, PLLC. My firm, along with Jacobson Phillips PLLC, Normand PLLC, Edelsberg Law, P.A., Shamis & Gentile P.A., and Bailey Glasser LLP (collectively "Class Counsel") serve as co-counsel of record for Plaintiffs Lauren Reynolds and Lauri Penn ("Plaintiffs") against Progressive Direct Insurance Company and Progressive Specialty Insurance Company (together, "Progressive") (collectively "Progressive" or "Defendants") in

1

the above-captioned consolidated cases (the "Action").

2. I make this Declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. I have personal knowledge of the facts set forth in this Declaration based on active participation in all aspects of the prosecution and resolution of the Action. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

II. Summary of the Action

3. Plaintiff Reynolds filed her class action complaint on April 20, 2022. *See* ECF No. 1. The complaint went through several iterations, with an additional plaintiff, Lauri Penn, being added on behalf of an additional Progressive entity, and some claims being narrowed in response to Progressive's motions to dismiss. *See* ECF Nos. 6, 7, 12, 21, 22, 25, 35, 48, 49, 50, 51, 53. After Defendant filed its answer, ECF No. 50, the parties engaged in discovery and, on July 26, 2023, Plaintiff moved for class certification. *See* ECF No. 63. The Motion for Class Certification was supported with voluminous evidence, including four expert reports. *See* ECF Nos. 63-1–63-13. Defendant opposed the motion, ECF Nos. 77–79, supported by reports of its own experts, among other evidence. *Id*. Plaintiffs filed their reply in support of the Motion for Class Certification on April 25, 2024 (ECF No. 90).

4. The Court heard oral argument concerning the Motion for Class Certification on March 7, 2024. A few weeks later, the Court entered a

comprehensive order granting class certification (ECF No. 116). The Court found that the proposed classes meet every requirement of Federal Rule of Civil Procedure of 23(a) and 23(b)(3), including that the Class is sufficiently numerous and ascertainable, Plaintiffs Reynolds and Penn are adequate and typical Class members, that common issues predominate concerning the contractual claims, and that a class action is a superior method of adjudicating the controversy. *Id.* The Court later entered orders appointing Plaintiffs' Counsel as Class Counsel, ECF No. 138, and approving the Notice Plan, ECF No. 191.

5. After the Court certified the classes, the parties engaged in additional substantive motion practice. Plaintiffs moved to exclude the expert testimony of Progressive's experts Jonathan Walker and Marc Spizzirri, while Progressive moved to exclude the expert testimony of Plaintiffs' experts Kirk Felix, Jeffrey Martin, Dr. Michelle Lacey, and Jason Merritt. *See* ECF Nos. 125, 126, 127, 130, 133, 134. These motions were fully briefed. *See* ECF Nos. 139, 140, 143, 144, 145, 146. Progressive also moved for summary judgment, ECF Nos. 135, which Plaintiffs opposed, ECF No. 148; *see also* Progressive's Reply, ECF No. 166.

6. With these many motions pending, the Court set a jury trial to begin in April 2025, *see* ECF No. 179, which it continued to August 4, 2025, on Progressive's opposed motion. *See* ECF No. 192.

7. In March 2025, the parties agreed to participate in a confidential

settlement mediation. To prepare for mediation, Class Counsel undertook an extensive and thorough review of the voluminous data produced by Progressive concerning all Settlement Class Members and the data supporting calculation of the PSA Impact Amount. Using its analysis of this data and other information gained in discovery, Class Counsel prepared a detailed mediation brief that set forth Plaintiffs' legal and factual positions. This rigorous preparation ensured that Plaintiffs entered mediation with a fully developed, data-driven strategy aimed at achieving a fair and informed resolution for the Classes.

8. On April 16, 2025, the parties participated in a full-day mediation with Steven R. Jaffe, an experienced mediator. The parties negotiated a term sheet which settled the claims against both Defendants.

9. Following the mediation, the parties finalized the Settlement Agreement that Plaintiffs now move unopposed for the Court to approve. A copy of the Class Action Settlement Agreement is attached as Exhibit F to this Declaration. The parties have entered no agreements outside the Settlement Agreement.

### III. Plaintiffs' and Class Counsel's Role in Prosecuting and Settling the Action

10. Plaintiffs and Class Counsel have zealously and skillfully represented the interests of the proposed Settlement Classes and committed substantial resources to the resolution of the Settlement Classes' claims.

11. Plaintiffs and Class Counsel performed significant work in identifying

and litigating the claims of Plaintiffs and the Settlement Class Members prior to entering the Settlement, including engaging in extensive factual investigation; drafting the initial and amended complaints; completing both fact and expert discovery and reviewing voluminous discovery materials; engaging in substantial motions practice (including Defendants' motion to dismiss, Plaintiffs' motion for class certification, Progressive's petition for interlocutory review of the class certification order, motions for summary judgment, and *Daubert* briefs); conducting pre-trial preparations and engaging in pre-trial proceedings; and participating in a full-day mediation. Indeed, this case was not successfully settled until the very eve of trial.

12. Thus, by the time the Settlement was reached, Plaintiffs and Class Counsel were well informed about the strengths and weaknesses of their claims and Defendants' defenses. This is especially true given that Class Counsel are simultaneously litigating virtually identical cases in approximately 20 other states, including two others that were also settled on the eve of trial in the Southern District of New York (*Volino, et. al. v. Progressive Casualty Ins. Co., et al.*, (S.D.N.Y.), No. 1:21-cv-06243-LGS (hereinafter, "*Volino*")), and in the Northern District of Georgia (*Brown et al. v. Progressive v. Progressive Mountain Ins. Co. et. al.*, No. 3:21-cv-00175-TCB (hereinafter, "*Brown*")). Suffice it to say, Class Counsel have a meticulous and comprehensive understanding of the issues in this case, the strengths

and weaknesses of the claims and defenses, and the pros and cons of potential settlement terms.

13. In sum, the Parties agreed to the terms of the Settlement through experienced counsel who possessed all the information necessary to evaluate the case, determined the contours of the proposed Settlement Classes, and reached a fair and reasonable compromise after negotiating the terms of the Settlement at arm's length and with the assistance of neutral mediators.

14. Further, Plaintiffs and Class Counsel have vigorously represented the Settlement Classes in this Action and will continue to do so after preliminary and final approval of the Settlement (if approved).

15. Plaintiffs Reynolds and Penn have actively participated in this matter. Each provided relevant information regarding his or her total loss claim and worked with counsel to prepare and review the complaints and other pleadings. Additionally, they provided extensive deposition testimony, met with trial counsel to prepare to testify at trial, and was prepared and willing to do so. Each Plaintiff communicated regularly with counsel throughout the case.

## IV.   Recommendation of Class Counsel

16. The total amount of funds made available to the Class ($30,748,947) represents approximately 100% of the compensatory damages alleged by Plaintiffs under the damages model they were prepared to present at trial. Compensatory

damages are calculated as the difference between what each Class Member received in ACV benefits and what they would have received if the PSA deduction had not been applied—the "PSA Impact Amount." The average cash payment is approximately $533, which is calculated by dividing the $30,748,947 in currently estimated available funds by the currently estimated total of 57,646 claims within the Settlement Classes.

17. For both Settlement Classes, the PSA Impact Amount is 4.31% of the ACV of each Settlement Class Member's total loss vehicle. That ACV amount is reflected in Progressive's data under the column "Valuation_ACVAmt." The PSA Impact Amount is uniformly applied to each Settlement Class Member in an equal manner

18. Progressive will pay 100% of the PSA Impact Amount to Settlement Class Members who submit a claim.

19. As an additional benefit to the Classes, Progressive has agreed to pay attorney's fees, litigation costs, and costs of notice and administration separately, so there is zero reduction in any Class Member's individual payment.

20. Based on our thorough examination and investigation of the facts and law relating to Plaintiffs' claims on behalf of the Settlement Classes and given the costs, risks, and delay of further litigation, Class Counsel believe the proposed Settlement is an excellent result and in the best interest of the Settlement Classes.

Our extensive investigation and four years of hard-fought litigation—here and in jurisdictions throughout the country—informed us about the strengths and weaknesses of Plaintiffs' claims, and allowed us to conduct an informed, fair, and objective evaluation of the value and risks of continued litigation.

21. Class Counsel recognize that despite our belief in the strength of Plaintiffs' claims, the expense, duration, and complexity of protracted litigation would be substantial and the outcome uncertain. Plaintiffs still would have had to prevail at trial to recover. Though Plaintiffs and Class Counsel strongly believe in the strength of their claims, Progressive was ready to mount an aggressive defense with experienced advocates. Practically speaking, Progressive has a significant war chest and the ability to take this case through trial, judgment, and subsequent appeals.

22. Class Counsel is also mindful that absent the proposed Settlement, Progressive would continue to challenge liability, would prepare a competent defense at trial, and would likely file a motion to decertify the Litigation Classes or appeal any judgment favorable to Plaintiffs, as well as appeal the Order granting class certification. There is a significant risk that the Eleventh Circuit would ultimately reverse this Court's ruling on class certification or any favorable summary judgment or verdict in Plaintiffs' and the Classes' favor.

23. Based on the foregoing, it is Class Counsel's professional opinion that

the relief provided by the proposed Settlement is fair, adequate, reasonable, and in the best interests of the Settlement Classes, and we respectfully recommend it to the Court for its preliminary (and, ultimately, final) approval.

24. Class Counsel have conferred with Plaintiffs who also support the proposed Settlement.

## V.  Selection of Settlement Administrator and the Proposed Notice Program

25. The Parties have agreed, subject to Court approval, that Epiq Class Action and Claims Solutions, Inc. ("Epiq") will serve as Settlement Administrator. Epiq has ample experience in class action administration and was previously appointed by this Court as administrator of the court-approved notice program implemented in accord with this Court's Class Certification Order. Moreover, Epiq was the Settlement Administrator for the settlements in *Volino* and *Brown* which are similar to this settlement, including a similar notice plan. While the notice plan here differs because Class Members will be required to submit a Claim Form, Epiq has deep experience administering these types of settlement procedures. Accordingly, Epiq is intimately familiar with the data and data systems, as well as the settlement procedures, that are relevant to this Action.

26. In its role as Settlement Administrator, Epiq shall be responsible for effectuating the Notice Program, described more fully in the contemporaneously filed Declaration of Cameron Azari.

27. Pursuant to the Notice Program, the Settlement Administrator shall mail a minimum of two Mail Notices (attached hereto as Exhibit A), served by first-class US mail to the last known address of each Settlement Class Member, including skip trace remailing for any undelivered mail; and a minimum of two Email Notices (attached hereto as Exhibit B) to those Settlement Class Members for whom an email address is available in Defendants' records. Settlement Class Members for whom Progressive maintains physical addresses and email addresses shall be sent both the Mail Notices and Email Notices.

28. Prior to sending Mail Notices to any Settlement Class Members, the Settlement Administrator shall attempt to update the last known addresses of the Settlement Class Members through the National Change of Address system or similar databases. Further, a skip trace shall be conducted for all returned postcards and reissued to any new current address located. The Mail Notices will include a detachable, pre-filled Claim Form with prepaid postage requiring only attestation that the information is correct (or correcting the information if not) and signing the form.

29. Prior to sending Email Notice to any Settlement Class Members, a skip trace for current email addresses shall be performed for the most current email address which notice will be sent to that email address and the email address of record. The Email Notice shall include a link to a pre-filled electronic Claim Form.

The Claim Form will require only that the claimant confirm he or she is the policyholder or otherwise entitled to payment.

30. Each Notice will include the average amount each Settlement Class Member will recover. Settlement Class Members will be provided an opportunity to select their form of payment (physical check or electronic payment such as PayPal, Venmo, ACH transfer, etc.).

31. The Notices apprise Settlement Class Members of (among other disclosures) the nature of the Action, the definition of the Settlement Classes, the claims and issues in the Action, and the claims that will be released. The Notices also: (i) advise that a Settlement Class Member may enter an appearance through counsel; (ii) describes the binding effect of a judgment on Settlement Class Members; (iii) states the procedures and deadline for Settlement Class Members to object to the proposed Settlement and the requested attorneys' fees and expenses; (iv) states the procedures and deadline for submitting a Claim Form to recover from the Settlement and for requesting exclusion; and (v) provides the date, time, and location of the Settlement Hearing. At Class Counsel's option, they are permitted to send one additional Email Notice and one additional Mail Notice. Progressive shall not be responsible for the cost of the third Email Notice and/or Mail Notice, and any such costs will be the sole responsibility of Class Counsel.

32. Both the Email Notice and the Mail Notice will include a link to the

Settlement Website. This is the website that will be created to house information about the certified classes, and it will be updated to include the following information: (1) a more detailed summary of the Settlement terms (the "Long Form Notice") (attached hereto as Exhibit C); (2) a "Contact Us" page with the Settlement Administrator's contact information; (3) the Settlement Agreement, motions for approval and for attorneys' fees (once filed), and all other important documents in the case; (4) important case dates and deadlines, including the deadlines to opt out and object; (5) a summary of Settlement Class Members' options; and (6) the date, time, and location of the Final Fairness Hearing. Members of the Settlement Class may alternatively submit claim forms online electronically with a "Submit a Claim" button at the Settlement Website (www.XXX.com) by providing one of the following in addition to their name and address: 1) the unique claim number found on the Notices; or 2) the claim number associated with the Total Loss. The Claim Form, attached hereto as Exhibit D, will be available to download from the Settlement Website.

33. The Notice Program will also establish a toll-free telephone line with an interactive voice response ("IVR") system to provide Settlement Class Members with responses to frequently asked questions and provide essential information regarding the litigation that is accessible 24 hours a day, 7 days a week.

34. Settlement administrative costs are estimated not to exceed $149,417,

which will be paid separately by Defendant and not decrease payments to Settlement Class Members. Epiq's estimate is attached as Exhibit E to this Declaration.

35. Additionally, Class Counsel will send one more Mail Notice and one more E-Mail Notice to Settlement Class Members who have not yet made claims, reminding them to make a claim. The costs associated with sending the third Mail Notice and E-mail Notice will be paid for by Class Counsel.

## VI. The Plan of Allocation

36. Class Counsel proposes that every Settlement Class Member who submits a valid and timely Claim Form will receive 100% of their PSA Impact Amount, tailored to the ACV of their totaled vehicle, with zero reductions for attorney's fees, litigation costs, or costs of notice and administration. For example, for a member of the Progressive Direct Class, the PSA Impact Amount is 4.31% of the Actual Cash Value of each Settlement Class Member's total loss vehicle. That Actual Cash Value Amount is reflected in Progressive's data under the column "Valuation_ACVAmt." If a class member's ACV was determined to be $10,000 then they would receive a cash payment of $431.

37. The deadline for submitting claims will be 30 days after the Final Approval Hearing.

38. The Claim Administrator may deny claims not in compliance with the Settlement Agreement including the filing of duplicative Claim Forms or failure to

fully complete the Claim Form. However, a valid Claim Form and Electronic Claim Form will only require that the recipient confirm that he or she is the Policyholder or is otherwise entitled to a Claim Payment. And there will be an opportunity to cure non-compliant claim forms. If a timely submitted Claim Form or Electronic Claim Form is unsigned, illegible, or does not include the Claim Number or policy number involved in the claim, the Settlement Administrator will send the claimant a letter, after consultation with Progressive and Class Counsel, informing of the defect and providing the claimant with thirty (30) days to cure the defect.

39.     Class Counsel proposes that Settlement Class Members' distributions be made under the following procedure, which tracks the damages model set forth in prior pleadings and that Class Counsel was prepared to present at trial. Under this procedure, each Settlement Class Member will be treated equitably, as each will receive what the parties estimate in good faith to be their potential damages claim in this Action.

## VII. Distribution of Payments to Members of the Settlement Classes

40.     Unless the Class Member requests payment via an electronic payment method, timely and valid claims will be paid via check within 60 days after the Effective Date.

41.     Checks shall be valid for 180 days. If, within 30 days of the void date, the claimant requests that another check be issued, it shall be reissued. After that

date, all uncashed checks will be void.

## VIII. Roles and Qualifications of Class Counsel and the Settlement Class Representatives and Requests for Attorneys' Fees, Litigation Expenses, and Service Awards

42. As noted above, in its Class Certification Order and subsequent orders, this Court previously appointed Plaintiffs Reynolds and Penn and Class Counsel to, respectively, represent the Classes as class representatives and Class Counsel.

43. For the same reasons previously espoused by this Court in its prior order, this Court should (i) appoint Plaintiffs Reynolds and Penn as class representatives, and (ii) appoint Carney Bates & Pulliam, Jacobson Phillips, Normand, Edelsberg Law, Shamis & Gentile, and Bailey Glasser as Class Counsel.

44. The Settlement Agreement provides that, consistent with the common fund doctrine, Class Counsel may file a motion with the Court requesting an award of attorneys' fees and out-of-pocket litigation expenses to compensate them for all the work already performed in this case, all of the work remaining to be performed in connection with this Settlement, and the risks undertaken in prosecuting this case. Class Counsel's requests for attorneys' fees will not exceed 22.5% of the total amount of funds made available to the Classes ($6,918,513.08) and their request for litigation expenses will not exceed $90,000. The enforceability of the Settlement is not contingent on the Court's approval of Class Counsel's application for an award of attorneys' fees or litigation expenses. The maximum amount Plaintiffs and Class

Counsel will request will be communicated in the various Notices provided to Class Members, and the fee petition, once filed, will be posted to the Settlement Website in advance of the deadline to object.

45. The Settlement Agreement further provides that Plaintiffs may request a service award for each Settlement Class Representative. Plaintiffs request a service award of no more than $10,000 for each Plaintiff, subject to approval by Court. These service awards, which will be paid separately by Progressive, will compensate Plaintiffs for their time and effort serving as the Settlement Class Representatives through three years of litigation and up to the eve of trial. The enforceability of the Settlement is not contingent on this Court's approval of Plaintiffs' requests for service awards.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 12th day of May 2025, in Little Rock, Arkansas.

                                        */s/ Hank Bates*
                                        Hank Bates